1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

LENDER PROCESSING SERVICES, INC.,

        Plaintiff(s),

v.

CATHERINE CORTEZ MASTO,

        Defendant(s).

2:12-CV-1122 JCM (PAL)

**ORDER**

      Presently before the court is defendant's ("the state" or "attorney general") motion to dismiss. (Doc. # 6).[1]  No response was filed.  Instead, plaintiff filed an amended complaint on the due date for the response (doc. # 12).

      Also before the court is a second motion to dismiss filed by the state.  (Doc. # 14).  Plaintiff Lender Processing Services, Inc. ("LPS") filed a response in opposition (doc. # 20), and the state filed a reply (doc. # 23).

**I.    Background**

      The Nevada Attorney General's office launched an investigation against LPS in October 2010, after reports and allegations of LPS's flawed document execution practices.  With the approval

---

[1] The plaintiff filed an amended complaint that mooted defendant's first motion to dismiss. Therefore, the court will deny the first motion to dismiss (doc. #6) as moot.  Defendant's second motion to dismiss (doc. # 14) addresses the amended complaint and is the operative motion.

James C. Mahan
U.S. District Judge

of the board of examiners, the attorney general's office retained a private law firm, Cohen Milstein Sellers & Toll PLLC ("CMST"), on a contingency fee basis to assist the state in investigating and prosecuting fraudulent lending practices in the wake of the collapse in Nevada's real estate market.

In December 2011, the state filed a consumer protection action in state court against LPS, alleging that LPS's practices violated the Nevada Deceptive Trade Practices Act ("DTPA"), NRS § 598.0903. The case is currently pending in the state court system. Throughout the investigation and settlement discussions, LPS interacted directly with both the attorney general's office and CMST.

The state represents, and LPS does not appear to dispute in its amended complaint, that it retained control and decision making authority of the state court lawsuit. Senior attorneys from the attorney general's office participated personally or supervised every major decision in the investigation and enforcement in the state case. Attorney General Cortez-Masto personally conducted at least three settlement discussions.

In the state court proceeding, the state filed a motion seeking permission to associate a lawyer from CMST as co-counsel. LPS opposed the motion, asserting that the use of contingency fee counsel was outside the authority of the attorney general's office and violated LPS's due process rights. Additionally, LPS argued that the attorney general's use of outside counsel on a contingency fee basis violated NRS § 228.110. As part of the motion in opposition, LPS attached its recently filed federal complaint. The state filed a reply to LPS's response, as directed by the state court. The federal complaint was filed approximately seven months after the state initiated state court proceedings and served LPS.[2]

At a hearing on the issue in state court in July 2012, LPS argued that the use of outside counsel by the state violated NRS § 228.110. However, LPS urged the state court judge not to reach

---

[2] Additionally, LPS was aware of the likelihood of a forthcoming state court proceeding at least one year prior to its commencement because LPS actively participated and cooperated in the joint investigation conducted by the state and CMST. Perhaps in a bit of foreshadowing of its decision, the court notes that LPS could have prevented *Younger* complications by filing a federal suit prior to the initiation of the state suit. LPS knew of the state's retention of CHST more than a year before the state filed the enforcement action in state court.

1    the issues of due process or other issues raised in the federal complaint.  Ruling from the bench, the
2    state court judge held that "the AG has the authority to associate with counsel under appropriate
3    circumstances as long as appropriate procedures are followed and the Attorney General continues
4    to direct the litigation."  The judge granted the state's pro hac vice motion.

5         The state then filed its motion to dismiss LPS's complaint in federal court.  LPS responded
6    by filing a petition for writ of mandamus or, in the alternative, writ of prohibition with the Nevada
7    Supreme Court.  LPS also filed an emergency motion to stay a decision on the motion to dismiss
8    pending disposition by the Nevada Supreme Court.

9         Magistrate Judge Leen held a hearing on the emergency motion to stay and denied the motion
10   to stay.  On the day LPS's response to the motion to dismiss was due, LPS filed an amended
11   complaint.  The attorney general filed a second motion to dismiss and the motion is now ripe for this
12   court's review.

13        LPS's amended complaint asserts that the attorney general has illegally deputized a private
14   law firm, in violation of NRS § 228.110 and seeks declaratory relief that the attorney general has
15   violated due process constitutional rights and Nevada law.  LPS also requests this court to enjoin the
16   state from employing CMST as a violation of NRS § 228.110.

17   **II.    Legal Standard**

18        There is a "longstanding public policy against federal court interference with state court
19   proceedings."  *Younger v. Harris*, 401 U.S. 37, 43 (1971) (holding a federal court should abstain
20   from interfering with an ongoing state criminal proceeding).  *Younger* abstention is deeply rooted
21   in comity and the balance of our federal system–"a proper respect for state functions, a recognition
22   of the fact that the entire country is made up of a Union of separate state governments, and a
23   continuance of the belief that the National Government will fare best if the States and their
24   institutions are left free to perform their separate functions in their separate ways."  *Id.* at 44.

25        "Although Younger itself involved potential interference with a state criminal case, the
26   Supreme Court has extended the doctrine to federal cases that would interfere with state civil cases
27   and state administrative proceedings."  *San Jose Valley Chamber of Commerce Political Action*

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1  *Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008).  "The component of *Younger* which

2  rests upon the threat to our federal system is thus applicable to a civil proceeding . . . which in

3  important respects is more akin to a criminal prosecution than are most civil cases."  *Huffman v.*

4  *Pursue, Ltd.*, 420 U.S. 592, 604 (1975) (noting that the state was a party to a state court proceeding

5  that was "both in aid of and closely related to criminal statutes").

6          Abstention under the *Younger* doctrine is not automatically appropriate solely because there

7  is an ongoing state proceeding.  "To the contrary, abstention remains an extraordinary and narrow

8  exception to the general rule that federal courts have no more right to decline the exercise of

9  jurisdiction which is given, than to usurp that which is not given."  *Potrero Hills Landfill, Inc. v.*

10  *Cnty of Solano*, 657 F.3d 876, 882 (9th Cir. 2011).

11          "Courts must abstain under *Younger* if four requirements are met: (1) a state-initiated

12  proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff

13  is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal

14  court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere

15  with the state proceeding in a way that *Younger* disapproves."  *San Jose*, 546 F.3d at 1092.

16          There are exceptions to the *Younger* doctrine so that a federal court may intervene in a state

17  court proceeding even though the four *Younger* requirements are not met.  A federal court may

18  equitably intervene in an ongoing state judicial proceeding if: (1) there is a showing of bad faith or

19  harassment by state officials responsible for the prosecution; or (2) where there exist other

20  extraordinary circumstances in which the necessary irreparably injury can be shown even in the

21  absence of the usual prerequisites of bad faith and harassment.  *Smith v. Plummer*, 458 Fed.Appx.

22  642, 643 (9th Cir. 2011) (citing *Kugler v. Helfant*, 421 U.S. 117 (1975).

23  **III.    Discussion**

24          LPS does not dispute factors one, three, and four.  In any event, the court finds that: (1) there

25  is a state-initiated proceeding that is ongoing; (2) LPS is not barred from litigating federal

26

27

28

**James C. Mahan**
**U.S. District Judge**                                          - 4 -

1    constitutional issues in the state proceeding[3]; and (3) the relief sought by LPS would have the
2    practical effect of enjoining or interfering with a state proceeding in a way that *Younger* disapproves.

3        LPS argues that the state cannot meet the second *Younger* factor because there is not an
4    important state interest implicated in the federal lawsuit.  According to LPS, the federal action does
5    not interfere with the state's attempts to enforce consumer protection laws in any significant way.
6    LPS argues that this court need not enjoin the state court action or the state's enforcement efforts;
7    LPS only seeks to enjoin CHST from participating in the enforcement action.  LPS argues that the
8    state's association of outside counsel is not an important state interest.

9        The state argues that LPS misunderstands "important state interest."  The state argues that
10   the important state interest is the enforcement of its consumer protection laws.  The state argues this
11   a strong, even compelling, interest.  The court agrees with the state.  When considering the second
12   prong under *Younger*, courts look to the interest implicated by the underlying state court proceeding,
13   not the interest allegedly implicated by the relevant federal action.  Applied to these parties, the
14   interest the court must look to is the interest of the state in enforcing its laws in a civil enforcement
15   action in a state court proceeding, not the interest alleged by the federal plaintiff–the interest of the
16   state in retaining outside counsel in its enforcement (as advanced by LPS in the federal action).

17       "The importance of the [state] interest is measured by considering its significance broadly,
18   rather than by focusing on the state's interest in the resolution of the individual case."  *Baffert*, 332
19   F.3d at 618.  The state has an important interest in "the protection of consumers from unfair business
20   practices, the compensation of those consumers for harm, and the need to ensure fair competition."

21   ───────────────────

22       [3] LPS specifically requested that the state court judge not decide the federal constitutional
     due process issues in its motion to dismiss in state court.  However, in response to the state's motion
23   for admission of a CHST attorney pro hac vice in the state civil enforcement action, LPS raised many
     of the arguments it raises now in federal court.  The court finds that the state proceedings provided
24   adequate and sufficient opportunities (and still provide adequate and sufficient opportunities because
     the case is presently before the Nevada Supreme Court) to raise federal constitutional challenges or
25   arguments.  *See Pennzoil v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("[T]he burden on this point rests
     on the federal plaintiff to show that state procedural law barred presentation of its claims." ) (internal
26   quotations and citations omitted); *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 619 (9th
27   Cir. 2003) ("We must assume that state procedures afford an adequate remedy, in the absence of
     unambiguous authority to the contrary.").
28

1  *See Commc'ns Telesystems Int'l v. California Pub. Util. Comm'n*, 196 F.3d 1011, 1017 (9th Cir.

2  1999); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978) (stating that states have a

3  particularly strong "interest in protecting consumers and regulating commercial transactions").

4     "The *Younger* doctrine recognizes that a state's ability to enforce its laws against socially

5  harmful conduct that the State believes in good faith to be punishable under its laws and Constitution

6  is a basic state function with which federal courts should not interfere." *Potrero Hills*, 657 F.3d at

7  883 (internal citations and quotations omitted). "Where the state is in an enforcement posture in the

8  state proceedings, the important interest requirement is easily satisfied, as the state's vital interest

9  in carrying out its executive functions is presumptively at stake." *Id.* at 883-84 (internal citations

10 and quotations omitted) (collecting cases recognizing a state's strong interest in enforcing its laws).

11    *Potrero Hills* clearly encompasses the scenario of the instant lawsuit because (1) the state is

12 a party and (2) the state is seeking to enforce the DTPA. *See id.* at 883-884 ("[T]he content of state

13 laws becomes important for *Younger* purposes only when coupled with the state executive's interest

14 in enforcing such laws.").[4]  The state has an important interest in enforcing the DTPA.[5]  The lawsuit

15 is currently proceeding through the state court system.  LPS does not argue that it has not had (or will

16 not have in the Nevada Supreme Court decision) an adequate and sufficient opportunity to raise all

17 challenges, whether federal or state, to the state's retention of CHST.[6]  The important state interest

18 is the executive's enforcement of its laws, not the assistance of CHST in enforcing those laws.

19    The court must abstain under *Younger* and principles of comity.  The court further finds that

20 none of the exceptions to *Younger*, such as bad faith or harassment by the state, apply so that the

21

22    [4] The court disagrees with LPS's interpretation of *Potrero Hills*.  LPS argues that *Potrero*

23 *Hills* mandates a federal court's refusal to abstain, which it clearly does when the state court action
was brought by a citizen group in ordinary civil litigation.  This case is clearly different because the

24 state, in a civil enforcement action, is bringing claims against LPS for violations of Nevada's DTPA.

25    [5] LPS likely does not like the probable outcome in the state court proceeding so it has come

26 to federal court to stop the enforcement action.

27    [6] Magistrate Judge Leen already stated at the hearing on the emergency motion to stay that

28 LPS's federal action "was filed for forum shopping purposes."  Hrg Tr. 16:12, Aug. 23, 2012.

**James C. Mahan**
**U.S. District Judge**

1    court could intervene.

2         IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion to

3    dismiss (doc. # 6) be, and the same hereby, is DENIED as moot.

4         IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's motion to

5    dismiss (doc. # 14) be, and the same hereby, is GRANTED and the case is dismissed.

6         DATED December 19, 2012.

7

8    _____
     **UNITED STATES DISTRICT JUDGE**

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 7 -